In re Wayne E. WHITESIDE, Debtor.

Mag Business Services Bentley Racing Products, Inc. and John D. Bentley, Movants,

v.

Wayne E. Whiteside, Respondent.

Bankruptcy No. 99–30488.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Sept. 1, 1999.

Max Glover, Webb City, MO, for plaintiff.

Kevin Checkett, Carthage, MO, for defendant.

### MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

The Movants, MAG Business Services, Bentley Racing Products, Inc., and John D. Bentley, filed an Involuntary Petition of Bankruptcy against Wayne E. Whiteside ("Whiteside") pursuant to 11 U.S.C. § 303 on June 10, 1999. Whiteside contested the Involuntary Petition. The Court held a hearing on the matter on August 26, 1999, at the Federal Courthouse in Joplin, Missouri, and after careful consideration of the issues and relevant law, the Court will deny the Involuntary Petition.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Rule 7052, Fed.R.Bankr.P.

### DISCUSSION

Movants apparently rely on 11 U.S.C. § 303(b)(1) as the basis for their Involuntary Petition. Section 303(b)(1) provides, in pertinent part:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contin-

gent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

11 U.S.C. § 303(b)(1).

The main issue at the hearing was whether the three petitioning creditors qualify as entities as circumscribed by § 303(b)(1); that is, is each petitioning creditor a holder of a claim against the potential debtor that is not contingent as to liability or the subject of a bona fide dispute. The aggregate amount of the claims was not in dispute.

"[A] bona fide dispute exists if there are 'substantial' factual and legal questions raised by the debtor bearing upon the debtor's liability," *B.D.W. Assoc. v. Busy Beaver Building Centers, Inc.*, 865 F.2d 65, 66–67 (3d Cir.1989), and "an objective inquiry is used to determine whether there is a factual or legal dispute." *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir.1991) (citing *Matter of Busick*, 831 F.2d 745, 750 (7th Cir.1987)); *see also, In re Lough*, 57 B.R. 993, 997 (Bankr.E.D.Mich.1986) ("[I]f there is either a genuine issue of material fact, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed."). The petitioning creditor(s) has the burden of establishing a prima facie case that no bona fide dispute exists. *Rimell*, 946 F.2d at 1365. If that is established, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. *Id.*

At the hearing, the Movants presented evidence purporting to show that Whiteside owed money to three entities— Bentley Racing Products, Inc., John D. Bentley ("Dave Bentley"), and MAG Business Services. However, the Movants did not present any evidence that the debts

were not subject to bona fide dispute. The Movants established, mainly by inadvertence, that the debts owed to Bentley Racing Products, Inc., and Dave Bentley met the requirements of § 303(b)(1), inasmuch as Whiteside admitted on the stand that he owed money to Bentley Racing Products, Inc., and the hand written note from Whiteside to Dave Bentley that read, "To: Dave Bentley I owe $10,000 dated 1/7/99—to be payable at—[sic] soon as I can—Thanks, Wayne Whiteside," is an unambiguous, objectively indisputable, admission of a debt owed to Dave Bentley. Whiteside's contention that the debt is owed to the corporation because the funds were actually advanced by Bentley Racing Products, Inc., is meritless. The debt is expressly owed to the payee, Dave Bentley; it does not matter that he obtained the funds for the loan from his corporation.

As for the debt purportedly owed to MAG Business Services, the Movants failed to establish a prima facie case that there was no bona fide dispute. In fact, the Court is unconvinced that they established that Whiteside owed a debt to MAG at all. The only evidence suggesting that Whiteside owed a debt to MAG was the testimony of Mary Smith, a co-owner of MAG. The Lease/Purchase Agreement that the Movants offered as the basis for the purported debt to MAG was signed by a non-existent corporation called Alba Bae RV and Marine, Inc., ("Alba Bae"), and the Movants offered absolutely no evidence showing the connection between Whiteside and Alba Bae.[1] By failing to establish the unity of identity between Alba Bae and Whiteside, the Movants failed to produce any objective evidence that Whiteside owed a debt to MAG; instead, the Movants left it as a he-said-she-said, entirely subjective dispute. The connection between Whiteside and Alba Bae RV and Marine, Inc., was only brought to light through the Court's questioning of the witness after direct and cross examination had been completed. Apparently, Whiteside signed the agreement as Alba Bae with the intention of forming the Alba Bae RV and Marine, Inc., corporation later, but the corporation was never formed.

■ The Movants also failed to show the absence of a bona fide dispute when they failed to produce any evidence, or even address, the validity of the Lease/Purchase Agreement in response to Whiteside's allegation that a lack of consideration rendered the contract unenforceable. The Court does not need to address the legal merits of Whiteside's claim that the contract is unenforceable, because "the court need not determine the probable outcome of the dispute, but merely whether one exists," *In re Everett,* 178 B.R. 132, 140 (Bankr.N.D.Ohio 1994), and we determine that one does. The Court believes that the existence of a valid contract is an essential element of a prima facie case that there is, objectively, no bona fide dispute regarding the debt, and the Movants failed to make an initial showing that the contract was valid, let alone defend it against a potentially meritorious argument. Rather, the Movants chose to rely solely on the subjective assertions of Mary Smith that Whiteside owed MAG money, and that does not satisfy the objective test applied under § 303.

■ The Court also notes that because Whiteside contested the Petition, the Movants also had to satisfy the requirements of § 303(h), which provides, in pertinent part:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the

1. On the first page of the Lease /Purchase Agreement, the corporate name was spelled Alba Brae RV and Marine, Inc. On the last page of the Agreement, it was spelled Alba Bae RV and Marine, Inc. Whatever the correct spelling is, Wayne Whiteside signed the Agreement as the corporate representative.

chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute.

11 U.S.C. § 303(h).

Even assuming that all three creditors held claims that were not subject to a bona fide dispute, the Movants' Involuntary Petition must be denied because they have not shown that Whiteside is not paying his debts as they become due.

■ The determination of whether a debtor is generally paying his or her debts as they become due is not a mechanical test, but is usually based on a number of factors such as the number of debts; the amount of the delinquencies; the materiality of the nonpayments; and the nature of the alleged debtor's conduct of his or her financial affairs. *In re Laclede Cab Company,* 76 B.R. 687, 691 (Bankr.E.D.Mo. 1987). *See also, In re Feinberg,* 232 B.R. 164, 170 (Bankr.E.D.Mo.1999) ("As a general statement 'not paying debts' includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the Alleged Debtor's operations.") (quoting *In re West Side Community Hospital, Inc.,* 112 B.R. 243, 257 (Bankr.N.D.Ill.1990)).

In this case, the paucity of relevant and substantial evidence precludes us from making any meaningful determination as to Whiteside's conduct in his financial affairs. The evidence submitted by Movants regarding Whiteside's failure to pay debts as they come due was limited to the testimony of Dave Bentley, the handwritten "List of Items Requiring Bentley's Payment" (Movants' Exhibit 6), and the "Accounts owed by Whiteside" (Movants' Exhibit 7). All of these items are far from conclusive as to Whiteside's financial con-

duct, inasmuch as the Movants did not adduce one piece of concrete evidence that Whiteside wasn't paying his debts as they became due, such as an actual bill, a letter from a creditor demanding payment, a lawsuit, or proof of an obligation with date certain that had not been paid. By their own testimony, all three Movants (counting Dave Bentley in his personal and corporate capacities) admitted that they had not made demand on the debts owed to them, and in two instances—the hand written "promissory note" from Whiteside to Dave Bentley and the Lease/Purchase Agreement—the evidence showed that there was no due date certain. The promissory note was due "as soon as possible," indicating that it was a demand note, on which demand had yet to be made, and the alleged obligation to MAG does not specify a date by which the debt must be paid; it only states that MAG is "entitled" to $10,-000, suggesting that demand must be made before it is due. Moreover, the alleged debt owed to MAG cannot be considered in the "generally not paying" determination because the Agreement was signed by Alba Bae, and the Movants never established that Alba Bae was Whiteside, or vice-versa.

For the foregoing reasons, the Court denies the Involuntary Petition.

In his Amended Answer, Whiteside asked the Court to award attorneys' fees and, in the event the Court should find that the Involuntary Petition was filed in bad faith, to award Whiteside actual or punitive damages.

If an involuntary petition is dismissed other than upon consent of all parties, 11 U.S.C. § 303(i) authorizes the Court to award costs and attorneys' fees and also to award compensation for damages resulting from a petition filed in bad faith, plus punitive damages, if warranted.[2]

At the hearing on August 26, the Court concluded the hearing on the Involuntary

---

**2.** 11 U.S.C. § 303(i) provides:
(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor

does not waive the right to judgment under this subsection, the court may grant judgment—

472

Petition and took the matter under advisement without affording Whiteside's attorney an opportunity to present evidence of Whiteside's costs and attorneys' fees or any evidence of a bad faith filing.

Accordingly, the Court will retain jurisdiction of this matter for the purpose of hearing evidence and determining the award of costs, attorneys' fees and damages, if any, should Whiteside desire to pursue those matters.

Based on the foregoing, it is

**ORDERED** that the Involuntary Petition filed by Movants MAG Business Services, Bentley Racing Products, Inc., and John D. Bentley against Wayne E. Whiteside is DENIED. It is

**FURTHER ORDERED** that the Court will conduct a hearing on the issues of costs, attorneys' fees, and damages to be awarded (if any) at 10:00 A.M. on September 23, 1999, at the Federal Courthouse in Joplin.

**SO ORDERED.**

(1) against the petitioners and in favor of the debtor for—
  (A) costs; or
  (B) a reasonable attorney's fee; or
(2) against any petitioner that filed the petition in bad faith, for—

  (A) any damages proximately caused by such filing; or
  (B) punitive damages.